## MARTHA F. HOWE *vs.* WILLIAM W. COLLINS.

### Franklin.  Opinion February 23, 1904.

*Deed*, Reservation of crops on hand or to be raised.  *Evidence*, in case of ambiguity admissible.  *Replevin*.

In giving construction to a reservation of crops in a deed, due effect will be given, as to the intent of the parties thereto, to their contemporaneous acts and the fact that the grantor did not own the crop at the time the deed was delivered.

*Held;* that the expression contained in a reservation clause of a deed that the grantee, the defendant in replevin, "is to have all the hay" related to the future occupation and subsequent production of the farm, and not to the old hay then in the barns.

If such phrase in the deed, taken in connection with the reservations and provisions immediately preceding, raises an ambiguity, it may be explained by oral evidence as to what hay it applied.

On report.  Judgment for plaintiff.

Replevin of ten tons of hay claimed by defendant.

The case appears in the opinion.

*E. E. Richards*, for plaintiff.

*Frank W. Butler*, for defendant.

SITTING:  WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, PEABODY, JJ.

STROUT, J.  Replevin of ten tons of hay in the bay of the upper barn of defendant.  Defendant claims title to it.

Shortly prior to July 9, 1902, defendant entered into negotiations for the purchase of a farm, the title to which stood in the name of Flora E. Hawes, daughter of the plaintiff and her husband David M. Howe.  All these parties participated in the transaction.  Mrs. Hawes and her parents were in the occupation of the farm.  The result was a sale of the farm to the defendant.  The deed bears date July 9, 1902, and was delivered on that or the succeeding day.  The

deed, after describing the land conveyed, contains the following reservations and provisions, — "I reserve suitable rent and No. of rooms to live in for myself and family including my father and mother for a period of three months from the date of this instrument. Also all the products of the garden, excepting the strawberries, and them I divide with them. I also reserve three pastures for the use of the same this season, excepting the said Collins is to pasture in them two cows and two heifers. I am also to have what early fruit as I want for my own use while there, and one-half of the field crops, such as corn, beans, oats, peas and potatoes. Also the wood that is in the shed fitted for the stove, said Collins is to have what wood he needs to use until it is taken away, and said Collins is to have all the hay."

The last clause, as to hay, is the only one in controversy here. To ascertain precisely what the parties intended by this provision, it is necessary to view it from their then standpoint. There were two barns on the farm,—the one nearest the dwelling-house was called the "home barn," and the other farther away the "upper barn." At the time of the trade there was in the upper barn a quantity of old hay, and some old hay in the home barn. Before the deed was delivered, the old hay in the home barn was removed to the upper barn. This hay had been cut in 1900 and 1901 from two lots of land owned by the plaintiff, Mrs. Howe. These lots did not belong to Mrs. Hawes, and were not conveyed to the defendant. The Hawes had a horse and eight head of cattle, and about one hundred and sixty sheep. When these should come to the barn in the autumn hay would be needed. Mrs. Hawes could not sell the hay owned by Mrs. Howe without her authority, and it cannot be presumed she attempted to do so, unless upon clear evidence, which is lacking here.

All the reservations and provisions in the deed following the description of the land conveyed looked to the future use and product of the farm for that season,—a future occupation by the grantor,—future pasturing,—future product of the land, corn, etc.,—future products of the garden,—future strawberry crop,—the wood on hand for future use,—and then follows the phrase, "Collins is to have all the hay." It would seem to be clear that the parties had only in mind the product of the farm to be received, and that the hay

intended was the crop about to be gathered. The phrase appears to
have been used in contradistinction from the division of crops pro-
vided for in the immediately preceding provisions. The cereal crops
were to be divided, but Collins was to have the crop of hay. If
more had been intended, some term, such as the old hay, or hay in
the barns, would in all probability have been employed. We think,
in the absence of all other evidence, than the deed itself, the fair and
legal construction of the provision in the deed is, that the hay therein
mentioned referred to the hay about to be cut upon the farm, and did
not include the old hay in the upper barn, the product of former
years.

This construction is aided by the acts of the parties after the deed
was given. Mr. Howe began to haul the old hay from the upper
barn on August seven. Mr. Collins' son helped about the first load.
The next load was taken on August fifteen. Mr. Collins' daughter
helped about that. The next load was taken on August sixteen.
The defendant knew of these haulings, amounting to four or five tons,
and made no objection, nor any claim of ownership. On September
25, Mr. Howe went for another load of hay from the upper barn,
and was forbidden to take it. Mrs. Howe says that Collins said,—
"Uncle David, what are you going to do today? What is the pro-
gram today? You ain't going to haul this hay. This is mine.
Don't you know that I have bought the whole?" To which Mr.
Howe said,—"I was to have the old hay, and you know it, and I
have hauled part of it away and you never opened your head. Why
didn't you?" Collins answered,—"because I thought I wouldn't."
Mr. Collins does not deny this conversation. It is beyond belief that
if Collins supposed he owned the old hay, he would have allowed
Howe to haul away four or five tons of it without objection. His
present claim appears to be an afterthought, based upon the wording
of the last clause in his deed.

But if the phrase in the deed,—"Collins is to have all the hay,"
taken in connection with the immediately preceding reservations and
provisions, raises an ambiguity, that may be explained by oral evi-
dence as to what hay it applied to. There was old hay, and hay
being then cut from the farm. The oral evidence is convincing that

the old hay was not sold to Collins, nor intended to be,—and that all parties understood that it was not included in Collins' purchase.

*Judgment for plaintiff.*